UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO.  3:10CR132(JCH) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| WOLFE T. MIKELIC | : | February 1, 2013 |

### GOVERNMENT'S  MEMORANDUM IN AID OF SENTENCING

**I.     BACKGROUND**

Defendant Wolfe T. Mikelic is currently scheduled to be sentenced on February 12, 2013, on his plea of guilty to conspiring with others to possess with the intent to distribute 100 kilograms or more of marijuana in violation of Title 21, United States Code, Section 846.  The statutory penalty for this violation is a mandatory minimum of five years' imprisonment up to a maximum term of 40 years' imprisonment.  Additionally, a term of supervised release of at least four years up to life is required to be imposed, and the defendant is also subject to a maximum fine of 5,000,000 dollars.  A special assessment of $100 is also required to be imposed at time of sentence.

A presentence report (PSR) prepared by the Probation Office has concluded that based on the amount of marijuana that was actually seized in this case, the sums of cash seized in Connecticut, New York, and Nebraska, and an analysis of the drug records recovered principally in Connecticut and at the defendant's residence in New York, that the offense involved between 100 and 400 kilograms of marijuana, and therefore, the defendant's base offense level is 26, (PSR ¶ 23). The presentence report also provides for an increase of two levels for obstruction of

justice, (PSR ¶ 27), due to defendant's false and misleading testimony at a suppression hearing conducted by the Honorable Christopher F. Droney, United States District Judge for the District of Connecticut, resulting in an adjusted offense level of 28. (PSR ¶ 28). Finally, the presentence report concludes that the defendant has admitted his responsibility for the offense of conviction, and therefore recommends a two- level reduction for acceptance of responsibility under U.S.S.G. §3E1.1(a), resulting in a Total Offense Level of 26. (PSR ¶ 30). The PSR has also concluded that the defendant has a Criminal History Category of I. (PSR ¶ 32). The combination of a Total Offense Level of 26 and a Criminal History Category I results in an advisory guideline sentence of 63 to 78 months. The United States concurs with this calculation.

However, the PSR also does state that given that the defendant has no criminal history points, and thus has a Criminal History Category of I, he potentially could qualify for safety valve treatment. If the Court was to be find the defendant to be eligible for the safety valve, under the provisions of U.S.S.G. §§ 5C1.2 and 2D1.1(b)(16), the defendant's offense level could be reduced to level 24 which would result in an advisory guideline range of 51 to 63 months.

Defendant Mikelic has met with government agents to discuss his criminal activities with respect to the offense to which he has pleaded guilty and for which he now is to be sentenced. Based on those discussions, the United States is prepared to recommend to this Court that the defendant has met the five requirements for safety valve relief as provided by U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f), and that he is therefore eligible to both have a sentence below the statutory minimum sentence be imposed, and for a two level reduction in his guideline offense level.[1] Accordingly, the Government believes that the defendant's Total Offense Level is 24 and

---

[1] The Government believes that the defendant does not have more than one criminal history point, the defendant did not employ violence to commit any of his criminal acts, the

that his guideline sentencing range is 51 to 63 months.

## II.  SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

When determining what sentence to impose on a defendant who has been convicted of an offense, under Title 18, United States Code, Section 3553(a), the Court should evaluate a number of factors including the Sentencing Guidelines.  Among the factors the Court is to consider are the nature and circumstances of the offense and of the defendant; the need for the sentence imposed to reflect the seriousness of the offense; the need for the imposed sentence to promote respect for the law; the need to provide just punishment for the offense; the need to provide adequate deterrence to criminal conduct; and the need to protect the public from further crimes by the defendant.  Title 18, United States Code, Sections 3553(a)(1) and 3553 (a)(2).

### A.    Nature and Circumstances of the Offense

As ably described in the presentence report prepared for this case, the investigation leading to defendant Mikelic's arrest began as a result of a motor vehicle stop conducted in the state of Nebraska by Nebraska State Troopers, during which a large quantity of cash, approximately $351,000, apparent drug records, and photographs depicting large marijuana grows were found in an automobile then being driven by defendant Mikelic's half-brother, Bret Battistelli.  Shipping documents which were also found in the car identified an address in Branford, Connecticut, as a possible destination of items being shipped by commercial carriers.

When that information was relayed by Nebraska authorities to the Branford Police Department, officers began to investigate the location.  Ultimately, on January 29, 2010, law enforcement surveillance units, as part of this investigation, observed defendant Mikelic at the

---

commission of the offense did not result in the death or bodily injury to another person, the defendant did not act as an organizer, leader, manager, or supervisor over the drug distribution activities of others, and finally, that the defendant has truthfully disclosed and provided all information he had concerning the offense of conviction.

Branford location, a warehouse/storage facility, and observed an apparent delivery being made to the location by a commercial carrier. As events unfolded, Mikelic was stopped by law enforcement officers after he had driven away from the warehouse. Inside the trunk of his automobile, officers found $40,000 in cash which Mikelic explained that he had forgotten was in there. (PSR ¶ 14). Subsequently, after a state search warrant for the warehouse had been obtained, local officers and federal agents entered the warehouse and discovered 132 separate heat sealed one pound packages of marijuana inside three shipping crates that had just been delivered to the defendant by the commercial carrier. The searchers also found another opened crate, obviously from an earlier shipment, which contained 18 similarly heat sealed one pound packages of marijuana. (PSR ¶ 15).

Later that same evening, defendant Mikelic gave consent for federal agents to search his residence in New York where he admitted that law enforcement personnel would find more marijuana. A subsequent search of that location resulted in the discovery of 6 pounds of marijuana still in heat sealed plastic bags similar to those found in the Branford warehouse. In addition, the officers recovered some $34,000 in cash, a money counting machine, a scale, and drug records similar in nature to those that had been found both in the Branford warehouse and in the possession of Bret Battistelli. (PSR ¶ 16). Moreover, the searching officers found evidence of another storage location which was searched after a New York state search warrant had been obtained. When that location was opened, the investigators found two safes that contained another 38 one pound heat sealed bags of marijuana. (PSR ¶ 17).

B.  **The Nature of the Defendant**

As indicated, the defendant has accumulated no criminal history points and accordingly he has a criminal history category of I. Significantly, although he had a misdemeanor New York

state conviction for petit larceny dating back some seventeen years ago, there is no record suggesting that the defendant was involved in drug possession or distribution activities.  Yet the investigation that led to the filing of the charges in this case has demonstrated that the defendant had both the contacts and the ability to acquire and then redistribute significantly large bulk quantities of marijuana.  The PSR does not indicate that the defendant has a history of alcohol or drug abuse and also has had no history for sustained substance abuse. (PSR ¶ 43).  In fact, while the defendant reported his first marijuana use at the age of thirteen or fourteen he states that he has only smoked the drug some fifty times in his entire life. (*Id.*).  Additionally, the PSR makes no mention of use of other illegal substances by the defendant.  Thus, the only conclusion that can be reached from these facts is that the defendant engaged in this crime purely for economic reasons, and that he had decided that selling drugs was a benefit to himself and to his family.

During the pendency of this case, while the defendant was on pretrial release, he apparently continued to engage in the marijuana trade, albeit at a much smaller level than what he had been doing when arrested in this case,  as evidenced by his arrest by New York authorities after a controlled delivery was made of marijuana that had been shipped from California to New York. (PSR ¶ 34).   Also, as identified in paragraph 18 of the presentence report, the defendant, perhaps in the hope that he could engineer a successful outcome of his motion to suppress, testified in a false and misleading manner at the suppression hearing before District Judge Droney, again evincing a decision on his part to put his own self interests before those of society.

### C. Remaining Sentencing Factors

From the Government's perspective, a sentence in the guideline range as adjusted by the safety valve provisions would satisfy the factors outlined in Section 3553(a)(2).  Such a sentence, while acknowledging that the defendant has taken a step to mediate some of the damage done to

society by his drug dealing activities, would reflect the seriousness of the offense of distributing large quantities of marijuana for significant financial gain. Such a sentence would also represent a just punishment for the sale of a substantial amount of a controlled substance. Moreover, not only should such a sentence deter the defendant from further criminal conduct, certainly while he is serving a sentence of imprisonment, the Government believes that those of the public who are of the persuasion to violate the nation's drug laws, particularly with respect to marijuana, might hesitate realizing that should they be caught, they too would be subject to a stiff jail sentence upon conviction.

     Additionally, such a sentence would also protect the public from further crimes caused by the defendant. His distribution of drugs put society at risk not only through the depredations caused by drug use by the defendant's customers, but also by the impact that drug use had on the families of his customers and those further down the line of distribution whose habits were supplied by the drugs the defendant had been instrumental in selling and distributing. The United States would ask that when considering the defendant's desire to provide more for his family, the Court not forget that the defendant's achievement of this goal was at the expense of the families of the ultimate recipients of the marijuana of which he had been involved in distributing. The defendant's gain was at their loss.

     Since the defendant has placed his own self interest and that of his family first, at considerable expense to society, he should be sentenced for distributing a substantial amount of a controlled substance. In distributing this substantial amount of illegal drugs, he achieved this goal, not by standing on a street corner selling $5 bags of marijuana, but rather, by selling the drug in large quantities to other individuals who then in turn further redistributed the drugs.

## IV. CONCLUSION

Given that the defendant played a significant role in the wholesale distribution of hundreds of pounds of marijuana, the United States believes that a sentence of imprisonment under the sentencing guidelines would be most appropriate. Such a sentence would satisfy the sentencing factors of Title 18, United States Code, Section 3553.

        Respectfully submitted,

        DAVID B. FEIN
        UNITED STATES ATTORNEY


        /s/ MICHAEL E. RUNOWICZ
        ASSISTANT U.S. ATTORNEY
        Federal Bar No. CT08084
        157 Church Street, 23rd Floor
        New Haven, CT  06510
        Tel.: (203) 821-3700
        Fax: (203) 773-5391
        Mike.Runowicz@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that on February 1, 2013, a copy of the foregoing Government's Memorandum in Aid of Sentencing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

      /s/ MICHAEL E. RUNOWICZ
      ASSISTANT U.S. ATTORNEY
      Federal Bar No. CT08084
      157 Church Street, 23rd Floor
      New Haven, CT  06510
      Tel.: (203) 821-3700
      Fax: (203) 773-5391
      Mike.Runowicz@usdoj.gov